THE GUYANDOTTE.[1]

CHAPPELL v. THE GUYANDOTTE.

(*District Court, E. D. New York.* July 26, 1889.)

COLLISION—VESSEL AT ANCHOR—ANCHOR LIGHTS.
The schooner barge M. was run down at night while at anchor near the middle of the Elizabeth river, a little below Lambert's Point pier, by the steamer G. *Held,* on conflicting testimony as to whether the barge exhibited an anchor light, that she did exhibit such light, and, the night being good for seeing lights, that a vigilant lookout on the steamer would have discovered, in time to have avoided, the barge, but the latter not having an anchor watch when lying in an exposed place, she was in fault also, and the damages should be divided.

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

In Admiralty.

Action by Frank H. Chappell to recover damages caused by collision.

*Carpenter & Mosher*, for libelant.

*Biddle & Ward*, for claimants.

BENEDICT, J. This is an action to recover for the sinking of the schooner barge Marion by the steam-ship Guyandotte, on the night of the 17th of December, 1887. The Marion, laden with a cargo of coal, consisting of about 1,595 tons, was anchored in or near the middle of the Elizabeth river a little below Lambert's Point pier. While so lying she was run down and sunk by the steam-ship Guyandotte, at the time bound down the Elizabeth river from Norfolk, Va. The amount of the claim is upwards of $24,000. Upon the greatly disputed question in this case, whether the barge was displaying an anchor light, I incline to the opinion that the strong array of witnesses which the barge has been able to produce upon that point must be held to outweigh the testimony produced in behalf of the steam-ship. The case of the claimants is somewhat weakened by the fact shown by the circumstance in proof, that at the time of the inspectors' examination, held shortly after the accident, they were desirous that the lookout on the boat should not be examined by the inspectors, and by the further fact that, although the master of the boat is now positive that the barge had no light, in his letter to the agents, written the day after the collision, he said that she had a dim light. Upon all the testimony I am unable to hold the barge in fault for not displaying an anchor light. But she must be held in fault for not maintaining an anchor watch. Anchored where she was in such a night, she was bound to take every precaution to warn approaching vessels of her presence. A vigilant watch on her deck might by shouting and swinging a lantern have attracted the attention of those on the steam-boat to her presence in the locality where she lay at anchor in time to have enabled the steam-boat to avoid her. The probability that a watch on deck would have prevented the disaster seems to me greater in this case than in the case of *The Clara*, 102 U. S. 200, where the decision of the circuit justice that neglect to have an anchor watch was fatal to a recovery was affirmed by the supreme court. If, as the weight of the evidence is, the barge had a light displayed, the steamer was also in fault for not seeing it in time. The night was good for seeing lights, and I cannot doubt that a vigilant lookout on board the steam-boat would have discovered the barge in time to enable the steam-boat to avoid her. Both vessels being found in fault, the damages will be apportioned.